FILED

2012 Aug-09  AM 09:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

KAWANA ZINN,              )
         Plaintiff,       )
                 )
vs.                   )     CASE NO. 5:11-CV-01800-NE
                 )
LIMESTONE COUNTY,     )
ALABAMA             )
         Defendant.    )

## MEMORANDUM OPINION

Pending before the court are a motion for summary judgment by defendant Limestone County, Alabama (doc. 47), a brief (doc. 48), and evidentiary materials (doc. 49) in support thereof; a response (doc. 55) filed by plaintiff Kawana Zinn; defendant's motion to strike plaintiff's response (doc. 57)[1]; and defendant's reply (doc. 58). Having considered the motion and all other pleadings filed to date, the

---

[1] Plaintiff filed a response to Defendant's Motion for Summary Judgment on July 23, 2012, which was seven days after the deadline of July 16, 2012, set forth in this court's Scheduling Order (doc. 22). Defendant's Motion is therefore meritorious. However, the court at its discretion may consider a pleading filed out of time provided that such consideration does not cause undue prejudice to the non-filing party. The court will therefore consider plaintiff's Response with the exception of Exhibit 4 (doc. 55-1) appended thereto. Exhibit 4 purports to be a sworn statement by plaintiff's husband recanting an allegation made against plaintiff by the husband during a domestic dispute (*see* discussion *infra* at 4–5). Because Exhibit 4 is undated (no year) and refers to the incident as having occurred on August 19, 2011, such that it could not possibly have been considered by defendant on October 15, 2010, the date of plaintiff's termination, the court is of the opinion that consideration of such Exhibit would be highly prejudicial to the defendant. Defendant's motion is therefore **GRANTED** with respect to plaintiff's Exhibit 4. The court will so rule by separate order.

court finds as follows:

## Factual Background

Plaintiff is an African-American female who worked for the Limestone County Sheriff's Department (the "Sheriff's Department") under Sheriff Mike Blakely for fourteen years beginning in 1997, the last nine years of which she worked as a courthouse security officer (*See* Compl. (doc. 1) at ¶ 6; Pl. Depo., Ex. A (doc. 49) at 12:9–21, 96:2–3). Plaintiff was terminated from the Sheriff's Department on October 15, 2010 (Pl. Depo., Ex. A (doc. 49) at 11:9–14), and her termination is the subject of the present litigation. Though many of the events prior to plaintiff's termination are the subject of dispute, the following facts are undisputed by the parties' testimony unless otherwise noted.

Plaintiff had a long history of both oral and written reprimands for misconduct during her tenure as an employee of the Limestone County Sheriff's Department. Sheriff Blakely testified that complaints about plaintiff's inability to follow the rules were "constant[]," and that the rules were "as she wanted them to be" (Blakely Depo., Ex. B (doc. 49) at 23:1–3). As early as 2001, plaintiff was written up for the "ongoing problem" of being "consistently late reporting to work" after having been "repeatedly counseled on this matter" (Pl. Depo., Ex. A (doc. 49) at 175:17–21 and Ex. A7), and her supervisor was written up for failing to discipline her for her tardiness (*see id.* at

174:20–175:10 and Ex. A6).[2] She was reprimanded in writing again for tardiness in August 2008 (*see id.* at 153:8–21 and Ex. A9), and admitted that there were multiple occasions when she was late without formal written reprimand (*see id.* at 209:12–210:6).[3] Plaintiff was once orally reprimanded by Sheriff Blakely for being rude to the general public (*see id.* at 157:14–23). She also had her paycheck garnished in both 2001 and 2004 for unpaid bills (*see id.* at 151:9–152:21); although the Limestone County Personnel Policies & Procedures manual (hereinafter, the "Personnel Manual") states that failure to pay bills is grounds for termination, plaintiff was never disciplined for these two garnishments (*see id.* at 278:8–279:2 and Exs. A2 and A3). Plaintiff was written up in July 2008 for "failure to get prior approval or to notify a supervisor before leaving work," though plaintiff disputes that she did not have permission in advance (*see id.* at 195:11–197:4 and Ex. A8). Plaintiff's personnel file contains notes by Lt. Richard Craig from 2009 indicating, first, that plaintiff was late in April and received a verbal warning and second, that plaintiff left early in July claiming she was sick after she had worked late at her

---

[2] Plaintiff expressly declined to dispute that Sheriff Blakely ultimately installed a time clock for employees to use to clock in as a result of plaintiff's consistent tardiness. *See* Blakely Depo., Ex. B (doc. 49) at 23:16–24:8.

[3] Sheriff Blakely testified that the vast majority of reprimands (he estimated "90 percent") are not reduced to writing because they are often issued orally both out of practicality and because his employees do not have time to issue written reprimands due to their workloads. *See* Blakely Depo., Ex. B (doc. 49) at 163:8–164:16.

second job; plaintiff disputes both of these incidents (*see id.* at 210:19–212:4 and Ex. A10).

In August 2010 plaintiff called the Sheriff's department to her residence claiming that her husband put a hole in the wall of her home and that he would not let her leave the house (*see id.* at 222:3–16).[4] Dale Townsend, an African-American Deputy Sheriff and plaintiff's personal friend, responded to the call (*see id.* at 223:18–19; Townsend Depo., Ex. E (doc. 49) at 9:22–23). Townsend testified that plaintiff was obviously upset and raising her voice, her husband was calm, the argument was over money the husband had taken from plaintiff, and plaintiff threatened to shoot her husband in his "f'ing head" (Townsend Depo., Ex. E (doc. 49) at 17:19–20:19).[5] Townsend explained the gravity of plaintiff's threat and suggested she not say things like that, in response to which plaintiff reiterated that she would indeed shoot her husband if he did not repay her the money (*see id.* at 19:17–20:9). Townsend subsequently prepared a report of the incident, but testified that he did not

---

[4] The Sheriff's Deputy who responded to the call did not recall plaintiff complaining that her husband would not allow her to leave for work. *See* Townsend Depo., Ex. E (doc. 49) at 21:20–23).

[5] Plaintiff testified that her husband later recanted, by written statement, his story that plaintiff had threatened to shoot him in the head. *See* Pl. Depo., Ex. A (doc. 49) at 266:22–267:17). Plaintiff includes her husband's statement as an attachment to her Response to Defendant's Motion for Summary Judgment (*see* Ex. 4, doc. 55-1). The court has partially granted defendant's motion to strike plaintiff's response with respect to Exhibit 4 (*see* footnote 1, *supra*).

want to include information showing that plaintiff had threatened to shoot her husband because plaintiff was a friend and coworker (*see id.* at 30:22–32:16). After Townsend's report, Sheriff Blakely considered arresting and firing plaintiff, but was dissuaded from doing so by Lt. Craig (*see* Craig Depo., Ex. C (doc. 49) at 26:2–4, 31:12–34:7). Plaintiff was written up by Captain Fred Sloss in a report which stated that the incident "caused tempers to flare and words to be spoken out of anger which will not be tolerated by the Limestone County Sheriff's Office," and "[a]ny future occurrence may result in a recommendation of termination" (*see* Ex. A14; Sloss Depo., Ex. D (doc. 49) at 23:1–24:10). Sloss testified that the report did not include a statement indicating that plaintiff had threatened to shoot her husband in the head "[t]o keep [plaintiff] from going to jail" (Sloss Depo., Ex. D (doc. 49) at 23:13–21).

About seven weeks after the domestic dispute, plaintiff was arrested by the Athens City Police on October 10, 2010, for disorderly conduct while leaving a youth football league board meeting at Athens Middle School (*see* Pl. Depo., Ex. A (doc. 49) at 15:15–17:20, 72:12–22; Pl. Resp., Ex. 1 (doc. 55); Ex. A11). The altercation had commenced between plaintiff and Christine Romine, a parent who had been "unruly" and "belligerent" at the meeting (Pl. Depo., Ex. A (doc. 49) at 46:17–23, 51:15–18, 54:17–60:14). Many of the precise facts surrounding the altercation are disputed, but the following facts are undisputed: plaintiff and Romine exchanged

heated words in "elevated tones" and argued publicly, in a crowd including children, over whether plaintiff called Romine a "bitch" (*id.* at 52:4–1, 59:11–60:9); plaintiff said to Romine "I did not call you a bitch" and "You are acting like a bitch" (*id.* at 56:6–60:1); Romine lunged toward plaintiff, tried to hit her, and had to be pulled off by bystanders (*see id.* at 56:1–5); two Athens police officers who had served as security at the meeting came onto the scene and arrested Romine and plaintiff (*see id.* at 68:7–72:22); plaintiff resisted being handcuffed, and one of the arresting officers threatened to tase her if she did not allow the other officer to handcuff her (*see id.* at 79:20–80:9); and plaintiff was subsequently charged with disorderly conduct (*see id.* at 86:15–18). One of the arresting officers, Officer Frankie Gonzalez, gave a statement in which he reported that once placed in his patrol car, plaintiff said "you know who I am," and that she telephoned a city judge while at the police station (*see* Blakely Depo., Ex. B6 (doc. 49). When Deputy King spoke to Romine, Romine said that she and plaintiff "were yelling and screaming at each other, and . . . [plaintiff] was making a big deal out of who she worked for, that she was going to get out of it on account of where she worked, that she had even called the city judge while they were in the booking room" (King Depo., Ex. F (doc. 49) at 73:16–74:2). After this event, Sheriff Blakely and his subordinates were in agreement that plaintiff needed to be terminated (*see* Blakely Depo., Ex. B (doc. 49) at 173:20–174:8).

6

Following the domestic dispute and the event resulting in her arrest, which occurred in a seven-week period, plaintiff was terminated from the Sheriff's Department on October 15, 2010 (*see id.* at 11:9–14). Plaintiff alleges that her termination was arbitrary and capricious and was a result of unlawful racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 206 (*see* Compl. (doc. 1) at ¶¶ 17, 24). Plaintiff also claims that defendant's personnel manual constitutes "a unilateral contract and/or basis giving [p]laintiff a reasonable expectation regarding the terms and conditions of her employment" (*id.* at ¶ 18), alleges that defendant has breached that contract, and prays for relief under several theories of damages based on breach of contract (*see id.* at ¶¶ 25–36.).

**Plaintiff's Named Comparitors**

For purposes of her Title VII claim, plaintiff identifies Alicia Sanders and Randy Burroughs as comparators who were arrested but not terminated (*see* Pl. Depo., Ex. A (doc. 49) at 238:21–239:10).

In 2005 Sanders was arrested and convicted of a DUI (*see* Blakely Depo., Ex. B (doc. 49) at 120:11–15 and Ex. B10). Prior to this arrest, Sanders had a perfect work history, having never received any complaints or been disciplined or counseled for anything, and had an "impeccable" work ethic and got along well with colleagues (*see id.* at 130:5–16). After her DUI arrest, Sanders was given a three-day suspension

7

without pay (*see id.* at 121:13–122:4).

Burroughs was arrested for domestic violence in October 2011 (*see id.* at 122:8–13). His wife called the police because he was drinking and allegedly pushed and head-butted her; however, the investigating officer could find no marks on the wife indicating physical contact (*see id.* at 122:19–123:16, 159:12–20). Before his arrest, Burroughs had no previous arrest and no problems as an employee (*see* King Depo., Ex. F (doc. 49) at 122:15–122:22). Because the responding deputy saw no physical marks on Burroughs' wife, and because Blakely knew of the relationship between Burroughs and his wife, Sheriff Blakely did not believe the wife's allegations; nonetheless, Burroughs was suspended without pay until further notice (*see* Blakely Depo., Ex. B (doc. 49) at 127:19–128:6, 126:19–22). Burroughs wife subsequently recanted her statement, dropped the charges, and Burroughs was allowed to return to work (*see id.* at 126:23–127:6). Burroughs was subsequently fired approximately five months later for drinking on the job (*see id.* at 127:6–7; King Depo., Ex. F (doc. 49) at 123:6–124:4).

With the arrests of Burroughs and Sanders, there were no allegations from anyone that they were swearing or arguing publicly in front of children, that they threatened to shoot anyone in the head, that they were disrespectful or uncooperative with law enforcement or resisted arrest, or that they claimed they would get

preferential treatment as a Sheriff's employee (*see id.* at 123:14–125:4).

Notably, Sheriff Blakely testified that he actively recruits black employees, that he needs black deputies in his department to work within the black community, that he needs the support of the black community as an elected official, and that he "want[s] more black people" to work in the department (Blakely Depo., Ex. B (doc. 49) at 153:19–155:17). When plaintiff was hired and when she received the transfer to courthouse security, she was given "preferential treatment" over other white applicants for the positions (*see id.* at 156:10–20). Captain Fred Sloss and Sergeant Janice Williams are two other African-American employees who were promoted over white employees who had more seniority (*see id.* at 156:20–157:3).

## Standard of Review

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 1355–56 (1986). The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115

9

(11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). "'The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case . . . . A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). A

factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

## Legal Analysis

Plaintiff contends that her termination was racially motivated. Implicit in a claim for race discrimination is the contention that racial animus factored in the adverse employment action at issue, and a plaintiff may use three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence, or statistical evidence. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). The analytical framework and burden of production varies depending on the method of proof chosen. *See id.*

When a plaintiff relies on circumstantial evidence, courts apply the burdenshifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which first requires a plaintiff to establish a prima facie case of discrimination. *See Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). If the plaintiff satisfies her initial burden, the defendant must show a legitimate, non-discriminatory reason for its employment action, after which the plaintiff must prove the stated reason is a pretext for unlawful discrimination. *See id.* Assuming plaintiff establishes a prima facie case and defendant provides a legitimate,

11

nondiscriminatory reason for the adverse employment action, to show pretext, the plaintiff must "cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (quoting *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)). The court must evaluate whether a plaintiff "has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *See id.* (quoting *Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1072 (3[d] Cir. 1996) (en banc)). However, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007).

To establish a prima facie case for disparate treatment in a race discrimination case, a plaintiff must show: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she; and (4) she was qualified to do the job. *See Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319,

1323 (11th Cir. 2006). For purposes of the pending motion, defendant has conceded that plaintiff satisfies the first, second, and fourth elements; however, defendant alleges she cannot identify a similarly situated employee of a different race who was treated more favorably because plaintiff's named comparators, Alicia Sanders and Randy Burroughs, are not "similarly situated." *See* Def. Br. (doc. 48) at 16.

The Eleventh Circuit requires that a plaintiff and any identified comparator be "similarly situated 'in all relevant respects.'" *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (quoting *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994)). Indeed, "[t]he comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Id.* In addition, in cases involving an employer who takes disciplinary action against a worker and allegedly treats a non-minority employee more favorably than the minority employee, "'it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (quoting *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998)). The "quantity and quality of the comparator's misconduct must be nearly identical." *Burke-Fowler*, 447 F.3d at 1323 (quoting *Maniccia*, 171 F.3d at 1368). "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of

13

the punishments imposed." *Maniccia*, 171 F.3d at 1368 (internal quotation marks omitted).

In this case, plaintiff cannot show that she is "nearly identical" to her named comparators. Plaintiff points to Alicia Sanders and Randy Burroughs as white employees who were arrested but not terminated. Alicia Sanders, a white female, was arrested (and eventually convicted) for a DUI in 2005. She was given three days' unpaid suspension and allowed to return to work. Before the DUI, Sanders had no problems as an employee, had a perfect work history, had never received any complaints from employees or the public, and had never been disciplined or counseled for anything. Sheriff Blakely testified that she had a great work ethic, was loyal to the Sheriff's Department, and interacted well with employees. Deputy King also was unaware of any problems with Sanders as an employee before her DUI. The DUI in 2005 is the only time Sanders has ever been arrested; she is still employed today, and no evidence has been presented to indicate any further misconduct. Randy Burroughs, a white male, was arrested for domestic violence in October 2011, one year after plaintiff's termination, when his wife called the police because he allegedly pushed and head-butted her; however, the investigating officer could find no marks on the wife indicating there had been any physical contact. Before his arrest, Burroughs had no previous problems with the law and no problems as an employee.

Additionally, the fact that the responding deputy saw no marks on Burroughs's wife to substantiate her claims, coupled with the Sheriff's personal knowledge of the relationship between Burroughs and his wife, caused Blakely to disbelieve some of the wife's accusations. Nonetheless, Burroughs was suspended until further notice and was allowed to return to work only after his wife recanted her story and dropped the charges.

With respect to Burroughs' and Sanders' arrests, there are no allegations that they had threatened to shoot someone in the head in front of a police officer, were swearing and arguing loudly in a crowd and in front of children, were having to be restrained by others, resisted arrest with conduct directed toward law enforcement, claimed preferential treatment as a Sheriff's Office employee, or otherwise created a public spectacle. Moreover, neither Burroughs nor Sanders had any previous problems as employees before their arrests. Plaintiff, on the other hand, had a documented history of problems getting to work on time, had been counseled about being rude to the public, had been sued twice, resulting in the garnishment of her paycheck, and was the reason Sheriff Blakely installed a time-clock. The record adequately demonstrates that plaintiff was certainly not a model employee.

Against this backdrop, plaintiff then had two incidents within a seven-week period where she was either arrested or engaged in conduct that made the responding

15

officer believe she should have been arrested. By contrast, Sanders, who by all accounts was close to a model employee, had one arrest unaccompanied by the "public spectacle" allegations like those made against plaintiff. She is plainly not "nearly identical" to plaintiff. When Burroughs was arrested for domestic violence, the arrest represented only one incident of misconduct, and it included no "public spectacle" allegations. Until then, he had been a good employee with no previous disciplinary problems. Therefore, at the time of his domestic violence arrest, he too was not "nearly identical" to plaintiff. *See, e.g.*, *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008) (holding, in case arising in Alabama of plaintiff who engaged in unlawful conduct, that conduct of employee in plainclothes who engaged in unlawful conduct directed at a relative while in a private residence was not "nearly identical" to that of a uniformed employee whose conduct occurred in public and was directed at a high-ranking officer of a neighboring county, such that the two were not proper comparators).

Plaintiff places great emphasis on the facts that she, (1) unlike Sanders, was not convicted of her charge, and (2) unlike Burroughs, was not actually arrested for the domestic violence charge. However, these arguments ignore several key facts. First, neither an arrest nor a conviction is required before termination; it is perfectly legitimate for an employer to terminate an employee who engages in misconduct,

16

even if that misconduct is not illegal or if the employee is not later convicted, as long as the decision is not based on race. Second, plaintiff escaped arrest from the domestic violence charge simply because her friends and coworkers, two of whom were African-American and thought her conduct warranted arrest, were trying to protect her. Third, it ignores the fact Burroughs was terminated a few months after his domestic violence arrest when he was caught drinking on the job.

The court concedes that in this third regard, plaintiff's situation after her arrest certainly was similar to Burroughs' situation after he was caught drinking on the job; within approximately five months' time, Burroughs had two incidents of misconduct, and within seven weeks' time, plaintiff had two incidents of misconduct. Burroughs and plaintiff were both terminated after the second event. However, if the Eleventh Circuit's requirement that comparators be "nearly identical" were relaxed, such that Burroughs, a white officer, could be arguably considered "similarly situated" to plaintiff, a black officer, insofar as both he and plaintiff committed multiple acts of misconduct within a short time-frame, then his termination actually demonstrates that he and plaintiff received not just commensurate treatment, but *identical* treatment—both were terminated as a result of their second act of misconduct.

Regardless, the Eleventh Circuit's "nearly identical" standard carries the day. "If two employees are not 'similarly situated,' the different application of workplace

rules does not constitute illegal discrimination," and the plaintiff's prima facie case fails as a matter of law. *Lathem v. Dept. of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999). Because plaintiff has not identified non-minority employees who are "nearly identical" but treated differently, she has failed to establish a prima facie case of race discrimination.

Finally, even if plaintiff could meet her initial burden under *McDonnell Douglas*, she still fails to demonstrate that defendant's nondiscriminatory reason for terminating her was merely pretext to mask racial discrimination. Defendant "need only produce evidence that could allow a rational fact finder to conclude that [plaintiff's] discharge was not made for a discriminatory reason." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998). Defendant's explanation certainly allows for such a conclusion by a rational fact finder, as many employers—particularly law enforcement agencies— would discharge an employee who, with an established history of misconduct, had threatened to shoot someone, engaged in a public swearing match, and resisted arrest, all within a period of seven weeks. Thus, assuming plaintiff could satisfy her initial burden, defendant has sufficiently rebutted any presumption of discriminatory intent.[6] In light of this,

---

[6] Indeed, as noted previously, Sheriff Blakely expressly testified to the fact that he "want[s] more black people" to work in the department, and actively endeavors to hire them. Blakely Depo., Ex. B (doc. 49) at 155:11–17.

18

plaintiff must now create a genuine issue of material fact as to whether the reasons advanced are pretextual.

This plaintiff cannot do. To summarize: Deputy Townsend, who is African-American and also plaintiff's personal friend, reported to his supervisors, and plaintiff failed to offer evidence to rebut, that plaintiff, not her husband, was the aggressor on the day of the domestic violence dispute; that her husband was calm; that she was very angry and threatened to shoot him in the head; and that she reaffirmed this threat even after Deputy Townsend advised her of the seriousness of a statement like that. Following this incident, Captain Sloss, also African-American, believed Deputy Townsend's account of the event and put a written disciplinary letter in plaintiff's personnel file cautioning her against that kind of conduct. Then, less than two months later, plaintiff was arrested for another verbal altercation, where several individuals allege that in a public place in front of children, she was angry, yelling, swearing, resisting arrest, and touting her credentials as a sheriff's office employee who would receive favoritism and avoid prosecution. The Sheriff's Department has stated that this is why she was terminated, and plaintiff has failed to produce any evidence establishing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in defendant's justification for her termination that a reasonable factfinder could find them unworthy of credence.

Accordingly, her claim fails as a matter of law.

### Conclusion

Having considered the foregoing and finding that plaintiff has failed to establish a genuine issue of material fact sufficient to allow this case to proceed to trial on any count, the court **ORDERS** that the defendant's motion for summary judgment (doc. 47) be **GRANTED**. The court shall so rule by separate order.

**DONE** and **ORDERED** this 9th day of August 2012.

_____

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

20